IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CASCABEL CATTLE COMPANY, LLC | § | |
| | § | |
| | § | |
| VS. | § | Civil Action No. _____ |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Tom Vilsack (or his successor) as | § | |
| SECRETARY OF AGRICULTURE, | § | |
| Kevin Shea (or his successor) as | § | |
| ADMINISTRATOR OF THE ANIMAL AND | § | |
| PLANT HEALTH INSPECTION SERVICE | § | |
| OF THE U.S.D.A | § | |

## PLAINTIFF'S' ORIGINAL COMPLAINT

To the Honorable United States District Judge:

Comes now CASCABEL CATTLE COMPANY, LLC., Plaintiff, complaining of the United States of America and the United States Department of Agriculture, collectively the Defendants herein, and by way of cause of action would respectfully show unto the court the following:

### I. PARTIES

1. Plaintiff, Cascabel Cattle Company, LLC, is a Texas limited liability with its principal office and place of business being in Cameron County, Texas

1.2.1 Defendant, the United States of America, maybe served with process in compliance with the Federal Rules of Civil Procedure 4(I) by serving a copy of the summons and complaint, by certified mail, return receipt requested to:

(a) the United States Attorney for the Southern District of Texas, Kenneth Magidson, at the following address U.S. Attorney's Office, Southern District of Texas, 1000

Louisiana, Ste. 2300, Houston, Texas 77002; and

(b) the United States Atty. Gen., Department of Justice, 950 Pennsylvania Ave., N.W., Room-324, Washington DC 20530.

1.2.2   The Secretary of Agriculture is sued in his official capacity, and may be served with service of process by serving his General Counsel at his business address, 1400 Independence Ave., SW, Washington, DC 20250.   Defendant Vilsack is referred to herein as "the Secretary."

1.2.3   The Administrator of the Animal and Plant Health Inspection Service, U.S. Department of Agriculture, is sued in his official capacity, and may be served with service of process by serving his General Counsel at his business address, 1400 Independence Ave., SW, Washington, DC 20250.   The Administrator is referred to herein as "the Administrator."

II.
JURISDICTION AND VENUE

2.1   Plaintiff brings this lawsuit under the Federal Tort Claims Act, 28 U.S.C. Sections 1346 (b), 2671-2680 and 39 U.S.C. Section 409(c), which vests exclusive subject matter jurisdiction of Federal tort claims litigation in the Federal District Court.

2.2   Venue is proper in the Southern District of Texas, Brownsville Division   A  civil  action against an officer or employee of an agency of the United States acting in his official capacity may be brought in any judicial district in which the plaintiffs reside, and is considered proper venue. *See* 28 USC § 1391(e).   Plaintiff's principal place of business is within this judicial district (i.e., U.S. District Court, Southern District of Texas, Brownsville Division), and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District.

III.

CONDITIONS PRECEDENT

3.1   All conditions precedent have been performed or have occurred.

3.2     Plaintiff timely presented this claim in writing to the United States on or about September 15, 2016. No definitive written notice of denial or acceptance has been received from the United States. This suit is filed after the passage of six months from the presentation of Plaintiff's claim.

IV.

FACTS

4.1     At all times relevant to this lawsuit, Plaintiff was engaged in, among other things, the raising of cattle in Cameron County Texas. The purpose of the endeavor was to raise cattle for sale at profit.

4.2     The Texas Cattle Fever Tick Eradication Program is a cooperative effort between the Animal and Plant Health Inspection Service (APHIS) of the U.S. Department of Agriculture (USDA) and the Texas Animal Health Commission ("TAHC"), each acting in cooperation with the other, but substantial federal funding of the TAHC program is by USDA.

4.3     The Fever Tick Eradication Program was established to eliminate bovine babesiosis, a severe and often fatal cattle disease, from the U.S. cattle population. Cattle fever ticks *Rhipicephalus* (*Boophilus*) *annulatus,* and southern cattle ticks (*R.* (*B.*) *microplus*) (collectively referred to as "cattle fever ticks") carry protozoan parasites that cause babesiosis. The disease and the cattle fever ticks were officially eradicated from the continental United States in 1943, with the exception of a permanent tick quarantine zone extending more than 500 miles along the Rio Grande from Del Rio to Brownsville, Texas.

4.4     Efforts to control cattle fever ticks along the permanent tick quarantine zone include vigilant surveillance and inspection for tick-infested cattle and wildlife, Co-Ral® 42% *Coumaphos* Flowable Insecticide acaricide dip or spray treatment of livestock (primarily cattle

and horses), and pasture vacation (temporary removal of cattle from infected pastures) to help protect cattle from potential exposure to the pathogen that can be transmitted by cattle fever ticks.

4.5     Defendant's personnel have alleged that cattle infected fever tick outbreaks have occurred outside the permanent tick quarantine zone in four of the eight Texas counties through which the zone passes: Maverick, Starr, Webb, and Zapata, and including within Cameron County, Texas, and have quarantined Plaintiffs' properties.

4.6     During the course of conducting his livestock operations, Plaintiff was required to submit his livestock to being rounded up by Defendants' employees, representatives and agents for the purposes of implementing the tick eradication program which involved, among other things, the periodic dipping of the livestock. Defendant USA, by and through its agents and employees from the USDA in the Animal and Plant Health Inspection Service ("APHIS"), and together with agents and employees of the Texas Animal Health Commission ("TAHC"), contacted Plaintiff and demanded that Plaintiff present his cattle for inspection by Defendant USDA/APHIS and Defendant TAHC for fever ticks. During the course of "rounding up" Plaintiff's cattle, Defendants' employees, representatives and agents killed at least 14 of Plaintiff's cattle by their negligent manner of performing that task. The death of the cattle was directly and proximately caused by the negligence of Defendants' employees, representatives and agents.

4.7     As part of the tick inspection/eradication activities, Plaintiff was required by Defendant to have his cattle "dipped" by total immersion or sprayed in "spray boxes" with Co-Ral® 42% *Coumaphos* Flowable Insecticide prior to issuing them a certificate permitting the proposed sale. The livestock were therefore required to be periodically dipped as designated by United States Department of Agriculture employees and other personnel contracted by the United States of America to participate in the implementation and operation of the tick eradication program.

Furthermore, the livestock were required to be dipped in chemical solutions mandated by such United States Department of Agriculture employees and other personnel contracted by the United States of America.

4.8     Plaintiff requested that his livestock be hand sprayed with Co-Ral® 42% *Coumaphos* Insecticide but agents and employees of APHIS and TAHC refused, improperly requiring Plaintiff to dip its cattle by either total immersion or spray box, which causes ingestion and inhalation, which is contrary to the EPA approved label. The cattle ingest some quantity of Co-Ral® 42% *Coumaphos* Flowable Insecticide used in the process and they cannot be submitted to the dipping vat or spray box without suffering some inhalation of Co-Ral® 42% *Coumaphos* Flowable Insecticide into their lungs. According to the use regualtions promilgated by the manufacturer of Co-Ral® 42% *Coumaphos* Flowable Insecticide (i) cattle of less than three months of age are not supposed to be subjected to such chemical at all and (ii) livestock should only receive the application of such chemical not more often than every six months.

4.9     Because of both ingestion and inhalation of Co-Ral® 42% *Coumaphos* Flowable Insecticide used, several of Plaintiffs' cattle also died (in adition to the ones which were killed by the Defendants' roundup), causing Plaintiff monetary damages. Defendants also injured Plaintiff by refusing to provide documentation of results of inspection of the ticks and blood samples which were taken of the cattle by Defendant's representatives.

4.10    Defendants employees injured Plaintiff by imposing non-existent requirements on Defendant related to the rounding-up and sequestering of the cattle, the frequency of spraying of the cattle, the refusal to allow tick free cattle to be taken from the area for sale and imposing a non-existent law requiring immersion dipping (causing ingestion of insecticide), thus subjecting Plaintiff's cattle to injuries or killing some of Plaintiffs' cattle.

4.11    Defendants injured Plaintiffs by enforcing a non-existent law requiring spray-box application of Co-Ral® 42% *Coumaphos* Flowable Insecticide (causing inhalation of insecticide fumes), subjecting plaintiffs' cattle to injuries or thus threatening to kill some of Plaintiffs' valuable cattle, denying Plaintiffs' constitutional rights, and violating the APA;

4.12    This claim is made by Plaintiff against the United States of America because the damages were proximately caused by the negligence, wrongful acts and/or omissions of USDA Employees (including USA contractors, if any), as vicariously liable for the negligent acts or omissions of its employees and contractors under the doctrine of respondeat superior, who were under certain standards of care but failed and/or refused to meet such standards of care in dealing with Plaintiff.

4.13    The basis of Plaintiff's claims arises out of the failure of numerous USDA Employees who were under a standard of care set forth herein but failed and/or refused to meet such standard of care and failed to act as an ordinary prudent person by causing Plaintiff's cattle to be rounded–up in a negligent manner and herding the cattle into restrictive corrals under threat of criminal prosecution, and denying their access to natural grass and water, thus causing damages to Plaintiff.

4.14    The basis of Plaintiff's claim arises out of the failure of numerous USDA Employees who were under a standard of care but failed and/or refused to meet such standard of care and failed to act as an ordinary prudent person by failing to use due care in the multiple applications (and frequency of such applications) of solutions of *coumaphos*, an acute oral poisonous hazard to Plaintiff's cattle, which can be fatal both if swallowed and if inhaled, thus causing damages to Plaintiff.

4.15    USDA's Employees were under a standard of care but failed and/or refused to meet such standard of care and failed to act as an ordinary prudent person by failing to use due care by applying solutions of *coumaphos* to the skin of Plaintiff's cattle by either total immersion in the

poisonous *coumaphos* chemical solution in a dip vat or by spraying Plaintiff's cattle with the poisonous *coumaphos* chemical solution using a completely enclosed and unvented spray dip machine, thus causing damages to Plaintiff.

4.16   USDA's Employees were under a standard of care but failed and/or refused to meet such standard of care and failed to act as an ordinary prudent person by failing to use due care by ignoring the health of Plaintiff's cattle, when it was obvious that Plaintiff's cattle were weak, very ill, and incapable of eating to maintain their nourishment, and continuing to apply the poisonous *coumaphos* by dipping and enclosed spraying to Plaintiff's cattle, thus causing damages to Plaintiff.

4.17   USDA's Employees were under a standard of care but failed and/or refused to meet such standard of care and failed to act as an ordinary prudent person (i) by failing to keep a proper lookout regarding the good health of Plaintiff's cattle, (ii) by failing to properly and timely apply the poisonous *coumaphos* solution to Plaintiff's cattle, (iii) by failing to stop the application of the poisonous *coumaphos* solution when the health of Plaintiff's cattle became endangered, (iv) by failing to take evasive action to avoid serious illness and deaths of Plaintiff's cattle by poisonous *coumaphos* solution, (v) by disregarding the compromised health of Plaintiff's cattle by the continuous applications of poisonous *coumaphos* solution, (vi) by failing to implement the plan of care based upon the actual and potential serious illnesses and deaths of Plaintiff's cattle by poisonous *coumaphos* solution, by failing to implement preventative measures to abate the poisoning of Plaintiff's cattle by poisonous *coumaphos* solution, (vii) by failing to implement preventative measures to abate the poisoning of Plaintiff's cattle by poisonous *coumaphos* solution, (viii) by placing Plaintiff's cattle in positions of peril due to the multiple and frequent applications of poisonous solution to Plaintiff's cattle, and (ix) by using dipping vats which did not

comply with federal law while dipping Plaintiff's cattle, thus causing damages to Plaintiff.

V.

DAMAGES

5.1    Plaintiff seeks to recover his actual and compensatory damages, including all damages available under federal statute and common law and equity, and also include post judgment interest as ordered by the court pursuant to certain circumstances as set out by federal law.

5.2    Included in, but not limited to, the losses suffered by Plaintiff are the loss (the death) of livestock, the reduction in the sales weight of livestock, the reduction in fertility of his cattle, the loss of normal productivity and weight gain of his cattle, the costs of complying with the wrongful mandates imposed by Defendants representatives, and the cost of burying the cattle.

5.3    Another portion of Plaintiff's damages include the forced exclusion of Plaintiff's right to the use and enjoyment of land legally leased by him, the cost of maintaining an unproductive lease for future use, the expenses attributable to the forced use of animal hay and feed, the forced clearing and fencing for corrals and the payment of contract labor involved with herding, feeding, and watering Plaintiff's cattle, loss of Plaintiff's valuable time depriving Plaintiff from his other business opportunities, expenses related to employment of cowboys to perform work for extended periods of time, purchase of rental equipment related to work with Plaintiff's animals, purchase of medicine related to the treatment of cattle and other animals.

5.4    The total damages suffered by Plaintiff fall within the jurisdictional limits of this court, but do not exceed $211,860.00 and such damages shall be determined by the court.

5.5    Further, Plaintiff also pleads for payment of his attorney fees and costs pursuant to 28 U.S.C. §2678 in the amount of 25 per cent of any judgment rendered pursuant to 28 U.S.C.

§1346(b) or any settlement made pursuant to 28 U.S.C. §2677, or the amount of 20 per cent of any award, compromise, or settlement made pursuant to 28 U.S.C. §2672, or any amount otherwise authorized pursuant to federal law.   Plaintiff offers to compromise and settle his Claim pursuant to either 28 U.S.C. §2677 or 28 U.S.C. §2672.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendants be cited to appear and answer, and that upon trial of this case that Plaintiff be granted judgment against the Defendants for all damages proximately caused such Defendants as a result of their actions as described herein, reasonable attorney's fees as allowed by law, pre and post judgment interest, costs of suit and such other and further relief, both at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

SANCHEZ WHITTINGTON & WOOD, LLC
3505 Boca Chica Blvd., Suite 100
Brownsville, Texas 78521-4064
(956) 546-3731 -- Telephone
(956) 546-3765 and/or 546-3766 – Telecopier
dsanchez@swjz.com

By: /s/ *Dennis Sanchez*
        Dennis Sanchez
        State Bar No. 17569600
        Attorney for Plaintiff
        CASCABEL CATTLE COMPANY, LLC